Roberts, J.
This is an action of contract in which the plaintiff seeks to recover damages for an alleged breach of warranty in the sale of dress material by the defendant corporation to the plaintiff. The declaration as amended is in two counts, both alleging the breach of an express warranty of fitness under the provisions of clause one of section 17 of chapter 106 of the General Laws. The answer of the defendant corporation was a general denial.
From the facts reported it could be found that the defendant corporation conducts a retail store at Temple Place in Boston and is engaged in the business of selling dress goods and that the plaintiff went to the defendant’s store *73 and informed a salesman that she was about to be married and desired to purchase dress material for a wedding gown. She was shown some material which did not satisfy her and it was suggested that she return later as they were expecting some Lamé material from France. On her return she was shown the Lamé material in question and the plaintiff took a sample of this cloth from the store solely to ascertain whether the material would look well when made into a gown.
On or about September 10, 1946 the plaintiff again returned to the defendant’s store and purchased for the sum of $153.90 enough of the cloth to make a wedding gown.
Subsequently the material was made into a wedding gown by the plaintiff’s dressmaker and she wore the dress only once, namely, on the day of her wedding which took place on the morning of November 11,1946, and about four hours later, while still wearing it, found that from the armpits to the waist on both sides to a width of some inches, the dress had turned a blue-green color and later it appeared that in several places scattered over the dress the silver thread (so-called) had turned to the color of gold. The dress was exhibited to the court where the blue-green splotches as described appeared to spread as though the whole area had been dyed, and there was further evidence from the plaintiff that members of her family had purchased dress material of Lamé and that in the course of some nine years the material had not changed color. The court found that the plaintiff was a normal girl and perspired normally.
There was evidence from the defendant that the material sold the plaintiff was known as Lamé or silver Lamé, which is a term applied to describe the material and not a patent or trade name, and that it was sold extensively as dress material and that the material consists of a fabric *74 over which silver has been spun. The defendant’s expert testified that silver is affected by various natural agencies with which it comes in contact and that sulphur would turn silver black and that other elements would turn silver to the color of gold or blue-green. He also testified that on contact with perspiration silver would turn to blue-green and that with the passing of time, it will tarnish. It was further indicated that the length of time and the extent of tarnishing depends upon the conditions under which it is kept. ■ Tests of the discolored part of the dress by the defendant’s expert showed chemical elements consistent with the presence of perspiration and that the gold discoloration appearing in other parts of the dress were consistent with the known properties of silver after a period of almost two years. It was not denied that the gown was of no further use as a result of the condition described.
There was no question raised by the defendant either as to damages or as to the adequacy of notice of the plaintiff’s claim of breach of warranty.
At the close of the trial and before final arguments the defendant made the following request for rulings:
(1) On the law and the evidence a finding should be entered for the defendant, for the evidence does not warrant a finding that there was any breach of warranty in connection with the sale of the cloth to the plaintiff. Denied * ... (9) Upon all the evidence the court should find that the 'defendant in selling the fabric to the plaintiff would be justified in assuming that the plaintiff would take ordinary precautions against damage thereto by reason of perspiration exuding from the plaintiff’s body and as a matter of law did not impliedly warrant that perspiration would not discolor the fabric. If material, I give this request through the words “plaintiff’s body” but assuming *75 which I do not find that the plaintiff did not wear dress shields and assuming that they would have been some protection to an area running from armpit to waist, it does not appear that the plaintiff did not use other reasonable means to control perspiration. As to the rest, it is obvious that there was no toarranty that perspiration, if that contributed to the result and not just body heat, would have the ordinary effect of soiling the dress goods, but I deny the request so far as it negatives an implied warranty that the cloth could not do what it did in this instance.
The court found for the plaintiff, and made the above rulings on the defendant’s requests for rulings.
The question raised by the defendant’s first request for ruling is whether on the record there is evidence which would legally justify the court’s finding that there was a breach of warranty in connection with the sale of the cloth to the plaintiff.
Count one of the plaintiff’s declaration sets up an alleged breach of express warranty of fitness for a particular purpose under clause one of § 17 of the Sales Act (G. L. c. 106), and it seems clear to us that on the evidence the plaintiff prior to the sale indicated to the defendant’s salesman the purpose for which the dress material was required and that the plaintiff relied on the skill and judgment of the defendant that the material was reasonably fit for the pre-disclosed purpose. Holt v. Mann, 294 Mass. 21; Country Club Soda Co., Inc. v. Arbuckle, 279 Mass. 121.
It could not be contended that because the material was open for inspection that a practical inspection would have disclosed any unsound, defective or imperfect condition of the cloth or that the inspection by the plaintiff in any way negatives her legal right to rely on the skill and judgment of the seller. Kurriss v. Conrad & Co., 312 Mass. 670; Bradt v. Holloway, 242 Mass. 446.
*76 But the defendant argues that there was no evidence that the material contained any specific or latent defect and more particularly that the trial judge’s finding that the material was unfit for the disclosed purpose is not supported by the evidence. We cannot agree with this contention as the plaintiff was not bound to point out in specific detail the defect or unfitness of the material and it was enough for the plaintiff to show its unfitness for the purpose for which it was bought. In effect the substance of the judge’s finding was that the material in question on the evidence was not reasonably fit for the predisclosed use. Parker v. Shaghalian & Co., Inc., 244 Mass. 19; Flynn v. Bedell, 242 Mass. 450; Leavitt v. Fiberloid Co., 196 Mass. 440.
While it is true that the defendant does not become an insurer and that the warranty must be reasonably construed in the light of common knowledge in reference to the nature of the article sold, Cavanagh v. F. W. Woolworth Co., 308 Mass. 423, we believe that there is nothing in the evidence which would indicate that the use to which the plaintiff exposed the material'in question was unreasonable or not to be fairly contemplated by the seller. It seems perfectly reasonable that the plaintiff was entitled to use the material as she- did and could ■ reasonably expect that the Lamé cloth would remain in good condition and quality during normal use under conditions of normal exposure and for a reasonable length of time. Parker v. Shaghalian, supra; Royal Paper Box Co. v. Munro & Church Co., 284 Mass. 446; West End Mfg. Co. v. Warren, 198 Mass 320.
The defendant has urged in his brief that it is hard and unreasonable to impose upon the sellers of silver Lamé cloth the burden of impliedly warranting the material against ordinary use is in our opinion unsound. The contention. assumes the fact that such material is in general *77 extremely delicate and sensitive to use. This fact was in dispute at the trial as the plaintiff’s evidence indicated that similar material purchased at another time had substantially different qualities.
We do not believe it can be said that the wearing qualities of silver Lamé cloth are a matter of common knowledge and if the particular cloth sold by the defendant was as delicate and easily affected as the plaintiff’s evidence showed, then the defendant should have known it and disclosed this fact to the plaintiff and given her an opportunity to make a choice of some other material for the plaintiff was entitled to rely on the skill and judgment of the defendant salesman and justified in assuming that the material sold was reasonably suitable for the plaintiff’s use. Kurriss v. Conrad & Co., Inc., supra; Holt v. Mann, supra.
The defendant’s second request No. 9 assumes a conclusion of fact which the court was not compelled to make, namely, that the plaintiff did not take ordinary precautions against damage to the material from perspiration. On this question the trial judge found that “the plaintiff was an ordinary girl who perspired normally”. There was evidence justifying the court’s conclusion that the plaintiff put the material to a reasonable use under the conditions of normal exposure. Flynn v. Bedell, supra; Parker v. Shaghalian, supra; Bianchi v. Denholm-McKay, 302 Mass. 469.
Report dismissed.

 The trial court’s ruling and findings on each of the defendant’s Requests for Rulings are printed in italics following the request.